**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**KELLY DAWN VERBAL, individually and on behalf of a class of others similarly situated,**

**Plaintiff,**

**vs.**

**TIVA HEALTHCARE, INC., a Florida Corporation, ENVISION PHYSICIAN SERVICES, LLC, a Delaware Limited Liability Company, and SHERIDAN HEALTHCARE, INC., a Delaware Corporation,**

**Defendants.**

______________________________________ /

**CASE NO.:**

**COMPLAINT – CLASS ACTION**

**CLASS ACTION COMPLAINT**

Plaintiff, KELLY DAWN VERBAL, individually and on behalf of a class of others similarly situated (collective "the Putative Class"), by and through her undersigned counsel, brings this Class Action Complaint against Defendants, TIVA HEALTHCARE, INC., a Florida Corporation, ENVISION PHYSICIAN SERVICES, LLC, a Delaware Limited Liability Company, and SHERIDAN HEALTHCARE, INC., a Delaware Corporation, (collectively referred to as "Defendants"), and alleges as follows:

1. Plaintiff and the Putative Class are Certified Registered Nurse Anesthetists ("CRNAs") who contracted with Defendants to perform anesthesiology services at medical facilities across the country.

2. Plaintiff brings this action against Defendants for herself and on behalf of the Putative Class for breach of an agreement related to unpaid compensation and related penalties

based on contracts they had with Defendants. Specifically, each CRNA entered into a "Provider Agreement" with Defendants, specifying that both the Provider Agreement as a whole, and "Schedule A" to the Provider Agreement, which set forth the assignment to which each CRNA was assigned ("Schedule A" or the "Assignment"), could only be terminated upon thirty (30) days' notice if terminated without cause. A copy of Plaintiff's Provider Agreement is attached hereto as **Exhibit "1"** (hereinafter the "Provider Agreement").

3. Upon information and belief the Provider Agreement attached as Exhibit 1 is identical in all material respects to the Provider Agreements Defendants utilized in contracting with the CRNAs in the Putative Class.

4. In violation of the unambiguous terms of the Provider Agreements, Defendants unilaterally and without notice cancelled Plaintiff's and the other CRNAs' Provider Agreements and/or Assignments in late March 2020.

5. Defendants did not provide the required thirty (30) days' notice as necessary under the Provider Agreements.

6. As a result, Plaintiff brings this nationwide class action individually and on behalf of those similarly situated CRNAs who have had their Provider Agreements and/or Assignments cancelled without proper notice in violation of the express terms of the Provider Agreements.

**GENERAL ALLEGATIONS**

7. Defendant TIVA HEALTHCARE, INC., is a Florida corporation with its principal place of business in Plantation, Florida.

8. Defendant ENVISION PHYSICIAN SERVICES, LLC, is a Delaware Limited Liability Company with its principal place of business in Plantation, Florida.

9. Defendant SHERIDAN HEALTHCARE, INC., is a Delaware Corporation with its principal place of business in Plantation, Florida.

10. Defendants operate a nationwide business which "empower[s] [their] 25,000+ clinicians to drive change, grow as leaders and build the future of medicine—all while enjoying an exceptional quality of practice at more than 780 hospitals, health systems, office-based practices and ambulatory surgery centers across the country." *See* https://www.envisionphysicianservices.com/sheridan-emcare

11. Included in those clinicians are CRNAs, like Plaintiff, who perform anesthesiology services at medical facilities across the country.

12. Based on information and belief, there are hundreds, if not over 1,000, CRNAs contracting with Defendants across the country.

13. Plaintiff resides in Orlando, Florida. Plaintiff has contracted with Defendants or their predecessors since 2016 as a CRNA.

14. This Court has original jurisdiction over all claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). This is a putative class action in which (1) there are 100 or more members in the proposed class, (2) at least some members of the proposed class have a different citizenship from Defendants, and (3) the claims of the Plaintiff and the proposed class members exceed $5,000,000.00 in the aggregate.

15. Venue in this district is proper pursuant to 28 U.S.C. § 1391, because Defendants, according to the State of Florida Division of Corporations, have their principal place of business in Plantation, Florida, which is within this judicial district.

**FACTUAL BACKGROUND**

16. As a CRNA, Plaintiff is paid an hourly wage guaranteed at forty (40) hours per

week. *See* Ex. 1 Assignment.

17. All other CRNAs who contracted with Defendants are given similar hourly wage guarantees.

18. Within their Contracts, both parties agree to give the other party (30) days' written notice before the Provider Agreement or Schedule A can be cancelled. *See* Ex. 1, ¶ 7.

19. On or about March 19, 2020, Plaintiff was told verbally, and not in writing, that her Provider Agreement and Assignment were being cancelled and terminated.

20. Subsequently, Plaintiff communicated with the physicians to whom she was assigned, who told her the Provider Agreement and Assignment were being terminated.

21. Then, on March 30, 2020, Plaintiff was sent a written letter unilaterally and officially cancelling her Assignment without the thirty days' notice required under the Provider Agreement. *See* copy attached as Exhibit 2.

22. Defendants have expressed unambiguously that they refuse to pay the hourly guaranteed compensation set forth in Schedule A during the required notice period.

23. Other CRNAs received identical letters as Plaintiff unilaterally cancelling their Assignments without the required written thirty days' notice.

24. Due to Defendants' actions, Plaintiff and all other CRNAs have not received the benefit of the contractually obligated written thirty day notice period and have not received, and will not receive, the compensation guaranteed under their Provider Agreements and Assignments.

25. Plaintiff and each CRNA have been, and will be, denied thousands of dollars of compensation to which they are each entitled under the express and unambiguous language of their Provider Agreements.

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action individually and as a class action pursuant to Rule 23 (a) and (b) of the Federal Rules of Civil Procedure. This action involves:

> All persons nationwide who contracted with Defendants as Certified Registered Nurse Anesthetists and whose Provider Agreements contained a written thirty day notice period before either party could cancel and who whose Provider Agreement and/or Schedule A was cancelled without thirty days' written notice in March 2020.

27. The persons in the Putative Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, upon information and belief, Defendants are contracted with hundreds of CRNAs who satisfy the definition of the Putative Class.

28. There are questions of law and fact common to this Putative Class that predominate over any questions solely affecting individual members of the Putative Class, including but not limited to:

a. Whether Defendants breached the Provider Agreements by failing to give thirty days' written notice before cancelling the Assignments/Schedules A;

b. Whether Defendants breached the Provider Agreements when they refused to pay the guaranteed compensation during the required thirty day written notice period;

c. Whether Plaintiff and the Putative Class have been damaged by Defendants' breach of the Provider Agreements;

d. The proper measure of damages sustained by Plaintiff and the Putative Class; and

e. Whether Plaintiffs are entitled to attorneys' fees and costs under the Provider Agreements for Defendants' breach.

29. Plaintiff's claims are typical of those of the Putative Class. Plaintiff, like other members of the Putative Class, was subjected to Defendants' actions of failing to give thirty days'

written notice before cancelling Schedule A, and Defendants' refusal the guaranteed compensation due during the thirty day written notice period.

30. Plaintiff will fairly and adequately protect the interests of the Putative Class, is committed to seeing that all affected CRNAs are paid the monies owed to them, and has retained counsel experienced in complex class action litigation.

31. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of this litigation where individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal court against a large corporate defendant.

32. Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual members of the Putative Class would create a risk of duplicative litigation that might result in inconsistent or varying adjudications.

33. Class certification of the claims is also appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Putative Class, thereby making appropriate declaratory and injunctive relief. The Putative Class is also entitled to injunctive relief to end Defendants' common and uniform practice of refusing to compensate its employees for the term of the thirty day notice period after written notice issued.

34. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Putative Class predominate over any questions affecting only individual members of the Putative Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' common and uniform Contracts and actions deny the Putative Class the guaranteed compensation they were entitled to during the required notice period. The damages suffered by the individual Putative Class

members are small compared to the expense and burden of individual prosecution of this litigation.

35. Plaintiff intends to send notice to all members of the Putative Class to the extent required by Rule 23.

**COUNT I – BREACH OF CONTRACT**

36. Plaintiff reincorporates and readopts all allegations contained within Paragraphs one (1) through thirty-five (35) above.

37. Defendants entered into materially identical Provider Agreements with Plaintiff and the Putative Class under which these individuals would be given thirty days' written notice before their Provider Agreements and/or Assignments could be cancelled.

38. Each Provider Agreement guaranteed a base weekly compensation.

39. The Provider Agreements required that Plaintiff and each Putative Class Member receive his or her guaranteed base compensation during the thirty day notice period.

40. Defendants breached this contract as described above by purporting to cancel the Assignments without providing the required thirty days' notice.

41. Defendants breached this contract as described above by refusing to pay the guaranteed based compensation required during the notice period.

42. As a direct result of Defendants' unlawful conduct, Plaintiff and the Putative Class have suffered a loss of the guaranteed compensation during the required thirty (30) day written notice period.

43. Plaintiff, for herself and on behalf of the Putative Class, seeks the amount of the guaranteed compensation withheld, attorneys' fees and costs as mandated by the Provider Agreement, and such other legal and equitable relief this Court deems just and proper based on Defendants' unlawful conduct.

**COUNT II – PROMISSORY ESTOPPEL**

44. Plaintiff reincorporates and readopts all allegations contained within Paragraphs one (1) through thirty-five (35) above.

45. Defendants reasonably expected to induce Plaintiff and the Putative Class, and did induce these individuals to rely on Defendants' promises contained within the Provider Agreements.

46. Plaintiff and the Putative Class reasonably relied on Defendants' promises in the Provider Agreements.

47. Defendants refused to honor their promises made to Plaintiff and the Putative Class by failing to give the required written notice as dictated by the Provider Agreements.

48. As a direct result of Defendants' unlawful conduct, Plaintiff and the Putative Class suffered a loss of their guaranteed compensation during the required thirty (30) day notice period.

49. Plaintiff, for herself and on behalf of the Putative Class, seeks the amount of the guaranteed compensation withheld and such other legal and equitable relief this Court deems just and proper based on Defendant's unlawful conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Putative Class, prays for relief as follows:

A. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 and appointment of Plaintiff and her Counsel to represent the Putative Class;

B. Judgment against Defendants for an amount equal to the Putative Class Representative's and the Putative Class's damages;

C. Declaratory judgment that Defendants' practices violate the law;

D. An award of prejudgment interest;

E. An award of attorneys' fees and costs; and

F. Such further relief as the Court deems just and equitable.

Respectfully submitted this 3rd day of April, 2020.

**MORGAN & MORGAN, P.A.**

**/s/ C. Ryan Morgan**
C. Ryan Morgan, Esq.
Florida Bar. No 15527
Morgan & Morgan, P.A.
20 N. Orange Ave., 15th Floor
Orlando, FL 32802-4979
Telephone: (407) 420-1414
Facsimile: (407) 245-3401
E-mail: RMorgan@forthepeople.com

-and-

Angeli Murthy, Esq.
Florida Bar No. 88758
Morgan & Morgan, P.A.
8151 Peters Rd., 4th Floor
Plantation, FL 33324
Tel: 954-318-0268
Fax: 954-327-3016
E-mail: Amurthy@forthepeople.com

***Attorneys for Plaintiff and the Putative Class***

# EXHIBIT "1"



# PROVIDER AGREEMENT

This Provider Agreement (the "Agreement") is dated and is between TIVA HealthCare, Inc. ("TIVA") and ("You or Yours").

1. Engagement, Term and Compensation. TIVA wishes to engage You to provide medical services at one or more medical facilities and You accept the engagement as an independent contractor under this Agreement for specific periods of time (assignments or coverage periods). The duration of each assignment and all other terms and conditions relating to an assignment, including the Fee Schedule, shall be described on Schedule A. A separate Schedule A shall be executed by You and TIVA for each assignment that You work during the Term of this Agreement. The purpose of this Agreement is to provide for a fair and legally sound relationship between You and TIVA. The term of this Agreement shall be effective on the Commencement Date listed on Schedule A and continue until terminated in accordance with Section 7 of this Agreement (the "Term").

2. Professional Liability Insurance. During the Term, the following will apply: TIVA shall obtain and pay the cost of professional liability coverage from its insurer to provide liability protection for You and TIVA for Your provision of medical services to TIVA's clients or affiliates ("Clients" or "TIVA's Clients") under this Agreement in the minimum amount required by the law of the state or commonwealth where You will provide services under this Agreement. TIVA may change or substitute the malpractice insurance policy coverage for You and/or TIVA for Your provision of medical services. TIVA will obtain a continuous claims made professional liability insurance policy to cover You under this Agreement. In the event You are no longer engaged by TIVA, TIVA shall, at TIVA's expense, continue to cover You for medical malpractice claims arising out of Your engagement under this Agreement through the applicable statute of limitations.

3. Duties and Licensure. You agree to provide services on behalf of TIVA as a licensed provider under the laws of the state or commonwealth where You are assigned to work and in accordance with the rules and regulations relating to the practice of medicine. You agree to maintain all required state and governmental licenses, certifications and authorizations necessary to perform Your obligations. You shall use Your best efforts, skills and abilities to perform Your duties and to promote TIVA's and its Clients' best interests.

4. Compliance, Incident Notification and Cooperation. You agree to comply with and follow all policies, standards, rules and regulations established by TIVA and TIVA's Clients. For and on Your behalf, TIVA's Clients shall have the sole and exclusive right and authority to enter into contractual relationships with HMOs, IPAs, PPOs, and employer groups (collectively "Third Party Payor(s)"), or other managed care arrangements. You agree to be bound by and comply with other agreements to which TIVA and its Clients are a party to, or to which it may become a party to, with hospitals/facilities, insurance companies, Third Party Payors and other providers of medical services in connection with the provision of medical services. You shall immediately notify TIVA of any and all incidents, unfavorable occurrences, notices or claims made arising out of Your services as soon as You become aware of this information and You shall cooperate in any investigation and in the defense of any incidents, unfavorable occurrences, notices and claims.





5. Independent Contractor, Withholdings, Duty To Account and Representations. You are not entitled to receive any benefits, including Workers' Compensation or other incidents of employment from TIVA. You shall be fully responsible for payment of all federal, state, city or other taxes required by any law, governmental regulation or ruling resulting from the compensation You receive under this Agreement or from any of TIVA's Clients. You shall assign, account, and pay to TIVA's Clients all accounts receivable, compensation and any other form of remuneration due from or paid by any source other than TIVA's Clients attributable to services You render in Your professional capacity on behalf of TIVA's Clients. You appoint TIVA's Clients as Your attorney in fact to execute, deliver and/or endorse checks, applications for payments, insurance claim forms or other instruments or documents, convenient or required, in the exclusive discretion of TIVA's Clients, to fully collect, secure and realize all company receivables, including all receivables for medical services, (the "Client Receivables") and other sums due with respect to services provided under this Agreement. This power of attorney is coupled with an interest, is irrevocable and shall survive the expiration or termination of this Agreement for a time period without limitation. All Client Receivables shall be the sole property of TIVA's respective Clients during the Term or after the termination of this Agreement, whether or not Client Receivables may have been derived in any way from Your performance under this Agreement. You represent and warrant to TIVA and its Clients that all statements made or information provided by You in this Agreement, your application to TIVA or in any interviews, references, resume or curriculum vitae submitted to TIVA or its Clients or in any insurance applications or any staff membership applications submitted to any third party in connection with this Agreement are correct, and do not or will not contain any untrue statement of a material fact, or omits or will omit to state a material fact necessary in order to make the statements or provisions in this Agreement not misleading or incomplete. You agree to immediately notify TIVA of any fact or circumstance which occurs or is discovered during the Term, which in itself or with the passage of time and/or the combination with other reasonably anticipated factors does render or will render any of these representations and warranties to be untrue. You are not a party to or bound by any other agreement, or subject to any restriction related to previous employment or contract containing confidentiality or non-compete covenants or other restrictions which may have a present or future adverse affect on TIVA, TIVA's Clients or You in the performance of Your duties under this Agreement.

6. Non-Competition and Remedies. You agree that You will not, during the Term of this Agreement and at any time within a 1 year period from the date of your last assignment at a facility or a related facility of that TIVA Client, directly or indirectly provide medical, services to that facility or a related facility of that TIVA Client. **THE PARTIES ACKNOWLEDGE THAT ANY OF TIVA'S OR ITS AFFILIATES, SUCCESSORS OR ASSIGNS ARE EXPRESSLY AUTHORIZED TO ENFORCE THE PROVISIONS OF THIS SECTION.** In the event of a breach by You of the provisions relating to duty to account, non-competition, and termination obligations (collectively, these provisions are the "Special Provisions"), may cause TIVA irreparable harm and monetary damages in an action at law may not provide an adequate remedy in the event of a breach. Accordingly, You agree that, in addition to any other remedies available to TIVA, TIVA may seek and obtain injunctive relief against the breach or threatened breach of the provisions of the Special Provisions as well as all other rights and remedies available at law and equity. You agree that the Special Provisions are necessary for the protection of TIVA's legitimate business duties and ethical obligations and are reasonable in scope and content.



6·2·16 CDV

7. Termination, Obligations and Privileges. This Agreement, or an applicable Schedule A, which reflects each assignment You work under this Agreement, may be terminated prior to the expiration of the Term as set forth in this Section. This Agreement may be terminated for cause at TIVA's option, at any time, upon delivery of written notice to You. Cause shall mean Your material breach of any provision of this Agreement. If a TIVA Client reasonably requests your removal because of your competence or professionalism, you will be paid through the date you actually worked. Additionally, this Agreement may be terminated by either party, without cause, upon thirty (30) days prior written notice. Additionally ,either TIVA or You may, at its option, terminate any executed Schedule A entered into pursuant to this Agreement without cause, upon thirty (30) days prior written notice without terminating this Agreement. In the event this Agreement, or any Schedule A, is terminated, TIVA, its Clients or their affiliates shall have no further obligation under this Agreement or otherwise to make any payments to, or bestow any benefits on, You from and after the date of the applicable termination, other than payments accrued and due and payable to You prior to the date of termination of this Agreement, or of the applicable assignment, as the case may be. Any Schedule A shall terminate automatically once six months have gone by without any services provided pursuant to that Schedule A.

8. Miscellaneous. Your representations and warranties, and provisions relating to non-competition, remedies, and termination shall survive the expiration or termination of this Agreement. This Agreement contains the entire understanding of the parties and merges and supersedes any prior or contemporaneous agreements between the parties relating to this Agreement's subject matter. This Agreement may only be modified or terminated in writing. Failure of a party to enforce a provision of this Agreement shall not be a waiver of any other provision. You shall not assign or delegate this personal service agreement, or any of Your rights or obligations under this Agreement, without TIVA's consent. TIVA may assign and delegate all of its rights and duties under this Agreement. You and TIVA each agree to execute and deliver all further agreements or documents and do all further acts that are necessary or expedient to carry out this Agreement's intended purposes. Whenever any notice/demand/request is required or permitted under this Agreement, that notice/demand/request shall be either hand-delivered in person or sent by U.S. Mail, registered or certified, postage prepaid, or delivered via overnight courier to the addresses listed on Schedule A. This Agreement shall be construed without regard to any presumption or other rule requiring construction against the drafting party. The invalidity or unenforceability of any one or more of the words contained in this Agreement shall not affect the validity or enforceability of the remaining provisions of this Agreement. TIVA's Clients shall be third party beneficiaries under this Agreement and shall be entitled to benefit from all the representations and warranties made by You to TIVA. TIVA's Clients shall be entitled to enforce directly any and all of TIVA's rights. No other party shall be deemed to be a third party beneficiary of this Agreement. In the event of any litigation, including appeals, with regard to this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party all reasonable fees, costs, and expenses of counsel (at pre-trial, trial and appellate levels). **EACH PARTY WAIVES ALL RIGHTS TO ANY TRIAL BY JURY IN ALL LITIGATION RELATING TO OR ARISING OUT OF THIS AGREEMENT.** Each of the parties have duly executed this Agreement as of the Execution Date.

| TIVA HealthCare, Inc.: | Provider Name: |
|---|---|
| Signature: [signature] | Signature: |
| Print Name: K. Dawn Verbaf | Print Name: |
| Date: 6-2-16. | Date: |



## ACKNOWLEDGEMENT OF INDEPENDENT CONTRACTOR STATUS

I acknowledge and agree that my engagement by TIVA HealthCare, Inc. (TIVA) is and will be as an independent contractor, and not as an employee, partner, or agent of TIVA or its affiliates or clients.

In this regard, I expressly acknowledge, understand, and agree as follows:

1. I will determine independently the coverage assignments I will accept; I will not be required by TIVA to accept any particular assignment or any assignment whatsoever.
2. I will be solely responsible for my professional actions in providing medical services to patients at clients' facilities or elsewhere.
3. My first duty at all times shall be to my patients, and I will exercise independent professional judgment regarding the care and treatment of my patients.
4. TIVA will not direct or control my professional medical services in any manner, including the time, place, type, or quality of professional services, working conditions, the right to utilize or hire assistants, or the prices charged for medical services rendered by me.
5. I will not have any authority to charge any item or incur any debt or other financial obligation on behalf of TIVA or undertake any obligation or enter into any agreement on behalf of TIVA.
6. I will not represent at any time that I am an employee of TIVA or any client or that I am authorized to make any contract, covenant, or obligation on behalf of TIVA or any client.
7. Payments made by TIVA to me pursuant to this agreement, if any, will be made by TIVA on behalf of its clients.
8. TIVA will not deduct, withhold and pay FICA, federal income tax, state income tax, worker's compensation insurance premiums, state disability insurance, unemployment benefit insurance, or any other payments that are ordinarily withheld or submitted by an employer for or on behalf of an employee; I understand that I will not be entitled to any unemployment benefit insurance, or any other payments that are ordinarily withheld or submitted by an employer for or on behalf or an employee; I understand that I will not be entitled to any unemployment, disability, or workers' compensation benefits from TIVA.
9. I will be solely responsible for, and I will pay in a timely manner, all federal, state, and local income or self-employment taxes due on monies paid by TIVA to me. I agree to indemnify and hold TIVA, its affiliates, and its clients harmless for any liability claims (including attorney's fees and expenses) incurred in connection with my failure to comply with this obligation.

PROVIDER

Kelly Dawn Verbal — Print Name

[Signature] — Signature

6-2-16 — Date

DocuSign Envelope ID:

ENVOY | TIVA healthcare

# Clinician Confirmation Letter

January 16, 2020

This confirmation letter ("Confirmation Letter") is issued pursuant to the Clinician Services Agreement in effect between Envision Physician Services (ENVOY) and the Clinician party listed below. This Confirmation Letter confirms the terms and details for the assignment listed below and supersedes any previously dated confirmation letters for this assignment.

**CLIENT:**
Envision Physician Services

**HEALTH CARE ENTITY (HCE):**
Anesthesiologist of Greater Orlando
2000 N Orange Ave., Ste 202
Orlando, FL 32804

**CLINICIAN:**
Kelly Dawn Verbal, CRNA

**CORPORATION NAME:**

**Account Manager:** Cedeline Daniel
**Recruiter:** Leanne Leidigh

**RATES:**

| | | |
|---|---|---|
| Regular: | $115.00 | - Per Hour 40 Hour Weekly Guarantee, (unless provider request off or the OR is closed due to an observed holiday) |
| Premium: | $125.00 | - Per Hour Premium Rate after 40 Hours Worked Weekly |
| Weekday Beeper: | $125.00 | - Daily Rate When Carrying the Beeper |
| Weekend Beeper: | $350.00 | - Per 24 Hours Sat and Sun (2 Gratis Hours) |
| Housing Stipend: | $125.00 | Per Day 7 Days a Week |
| Per Diem: | $30.00 | - Per Days Worked |

**SCHEDULE & DATES:**

| Start Date | End Date | Comments |
|---|---|---|
| January 27, 2020 | June 27, 2020 | Time off TBA; clinician must give 6 (six) weeks in advance |

**NOTES:**

**Envision Healthcare Corporation (Envision) has entered into a Corporate Integrity Agreement (CIA) with the Office of Inspector General (OIG) of the United States Department of Health and Human Service (HHS) to promote compliance with the statutes, regulations, and written directives of Medicare, Medicaid, and all other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) (Federal health care program requirements). As such, each Professional that works at Envision sites is required to complete annual compliance training. You will receive training instructions once you submit your first work record.**

Schedule to be determined by Client and agreed upon by the Clinician, with notification of such agreed schedule to be sent to ENVOY before any worked shifts. Any party may terminate such agreement upon thirty (30) days written notice to the other parties.

**HOLIDAY PAY** – Clinician services performed on the following holidays shall require an additional premium of 50% of the daily rate: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Christmas Day.

During the Term, ENVOY shall provide you with or reimburse you for reasonable housing, local transportation, and round trip transportation to/from the assignment, or the standard IRS rate for mileage if you are using your personal vehicle while on assignment.

This assignment is expressly contingent upon timely completion of credentialing and/or licensing requirements at **Anesthesiologist of Greater Orlando**

** This Confirmation Letter does not serve as a guarantee of coverage, but rather confirms agreed upon terms specific to this provider assignment.*

**Kelly Dawn Verbal, CRNA**
Print: Kelly Verbal
Sign: [signature] Date: 1/16/2020

**Envision Physician Services**
Print: Laurie DiMarzio, VP
Sign: [signature] Date: 1/16/2020

# EXHIBIT "2"

DocuSign Envelope ID: 4A5EA7C7-DC13-43EE-88BA-CF76299559DA




March 30, 2020

Dear Kelly Dawn Verbal CRNA:

This letter is formal notice of cancellation of your assignment on **March 23, 2020** at **Anesthesiologist of Greater Orlando.**

Assignment Cancellation Details:

- Facility: Anesthesiologist of Greater Orlando
- Facility Address: 2000 N Orange Ave., Ste# 202 Orlando, FL 32804
- End Date: March 23, 2020

Assignment Contacts:

Envoy Recruiter: Leanne Leidigh
Envoy Recruiting Manager: Liz Perez

Please note, any travel or lodging confirmed by the ENVOY team for this assignment will be cancelled.

We appreciate your attention to this matter.